KATE S. GOLD (SBN 156117)
Kate.Gold@dbr.com
DRINKER BIDDLE & REATH LLP
1800 Century Park East
Suite 1500
Los Angeles, CA  90067-1517
Telephone:      (310) 203-4000
Facsimile:       (310) 229-1285

JAIME D. WALTER (SBN 281066)
Jaime.Walter@dbr.com
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105-2235
Telephone:      (415) 591-7500
Facsimile:       (415) 591-7510

Attorneys for Defendant
BED BATH & BEYOND INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAYLOR MAGAZINER,<br><br>                 Plaintiff,<br><br>v.<br><br>BED BATH & BEYOND, INC., and DOES 1 through 5, inclusive,<br><br>                 Defendants. | Case No. _____<br><br>**DECLARATION OF KATE S. GOLD IN SUPPORT OF DEFENDANT BED BATH & BEYOND INC.'S REMOVAL TO FEDERAL COURT**<br><br>Complaint Filed:  March 20, 2017<br>Trial Date:  None Set |

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF KATE S. GOLD IN SUPPORT OF
NOTICE OF REMOVAL

CASE NO. _____

I, Kate S. Gold, declare as follows:

1.      I am a partner with the firm Drinker Biddle & Reath LLP, counsel of record for defendant Bed Bath & Beyond Inc. ("Defendant"). I make this declaration in support of Defendant's notice of removal. Except as otherwise indicated below, I have personal knowledge of the facts set forth in this declaration and, if called to testify under oath, could and would testify competently thereto.

2.      Attached as **Exhibit A** are true and correct copies of the Complaint and Summons served on Defendant, through its counsel of record, on May 30, 2017.

3.      Notice of this removal is being given to the State Court pursuant to 28 U.S.C. § 1446(d). A true and correct copy of the notice of removal to the State Court (without attachments) is attached hereto as **Exhibit B**. Exhibits A through B to this declaration constitute all process, pleadings, and orders served on or by Defendant in this action.

4.      Attached as **Exhibit C** is a true and correct copy of the Verdict and Settlement Summary in *Smith v. Orange Blossom Lines, Inc.*, No. YC029244 (L.A. Cty. Sup. Ct. Sept. 25, 1998), which is also available at 1998 WL 866029.

5.      Attached as **Exhibit D** is a true and correct copy of the Judgment on Special Verdicts in *Sallustio v. Kemper Independence Ins. Co.*, No. 34-2007-00882286 (Sac. Cty. Sup. Ct. May 22, 2014) ("*Sallustio*").

6.      Attached as **Exhibit E** is a true and correct copy of the Complaint filed in *Sallustio*.

7.      Attached as **Exhibit F** is a true and correct copy of the demand letter mailed to BBBY in this action.

Executed on this 29th day of June, 2017, at Los Angeles, California.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Kate S. Gold

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF KATE S. GOLD IN SUPPORT OF
NOTICE OF REMOVAL
- 2 -
CASE NO. _____

# EXHIBIT A

SUM-100

**SUMMONS**
*(CITATION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*
BED BATH & BEYOND, INC., DOES 1 through 5, inclusive.

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
TAYLOR MAGAZINER

FILED
Superior Court of California
County of Placer

MAR 20 2017

Jake Chatters
Executive Officer & Clerk
By: M. Anderson, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

CASE NUMBER:
*(Número del Caso):*
**SCV0039281**

The name and address of the court is:
*(El nombre y dirección de la corte es):*
THE SUPERIOR COURT OF CALIFORNIA IN AND FOR THE COUNTY OF PLACER
10820 Justice Center Drive
Roseville, CA 95678

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sheri L. Leonard (173544): Tele: (916) 787-4544
HENK LEONARD, A Professional Law Corporation
1260 Douglas Blvd., Suite 200, Roseville, CA 95661

DATE:
*(Fecha)* MAR 20 2017

Clerk, by _____, Deputy
*(Secretario)* M. Anderson *(Adjunto)*

For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

Essential Forms

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

ROBERT P. HENK   (147490)
SHERI L. LEONARD  (173544)

HENKLEONARD
A Professional Law Corporation
2260 Douglas Blvd., Suite 200
Roseville, CA 95661
Telephone:   (916) 787-4544
Fax:          (916) 787-4530

Attorneys for Plaintiff
**TAYLOR MAGAZINER**

FILED
Superior Court of California
County of Placer

MAR 20 2017

Jake Chatters
Executive Officer & Clerk
By: M. Anderson, Deputy

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF PLACER

| | |
|---|---|
| **TAYLOR MAGAZINER** | CASE NO.:  **S C V 0 0 3 9 2 8 1** |
| Plaintiff, | **PLAINTIFF'S COMPLAINT FOR DAMAGES FOR** |
| vs. | |
| **BED BATH & BEYOND, INC.**, and **DOES 1 through 5**, inclusive, | 1.  **BREACH OF LABOR CODE: FAILURE TO PAY OVERTIME WAGES;** |
| Defendant. | 2.  **BREACH OF LABOR CODE: FAILURE TO PAY ALL WAGES OWED AT TERMINATION OF EMPLOYMENT;** |
| | 3.  **BREACH OF LABOR CODE: FAILURE TO KEEP ACCURATE TIMECARDS; AND,** |
| | 4.  **DEFAMATION** |

COMES NOW, Plaintiff, **TAYLOR MAGAZINER**, individually, alleging Defendant, **BED BATH & BEYOND, INC.** as follows:

GENERAL ALLEGATIONS

1.     Plaintiff **TAYLOR MAGAZINER** is an individual, and a resident of Placer County, State of California.

2.     Plaintiff is informed, believes, and thereon alleges that Defendant **BED BATH & BEYOND, INC.** is, and at all times mentioned herein was a business entity, operating in the County of Placer, State of California.

3.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 5, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff is informed, believes, and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff' damages, as herein alleged, were proximately caused by their conduct.  Plaintiff will amend this Complaint to allege the true names and capacities of said defendants when they are ascertained.

4.     Plaintiff is informed, believes, and thereon alleges that at all times mentioned herein, each Defendant may have been an agent, servant and/or employee each of the remaining Defendants and may have acted pursuant to a common plan, that each Defendant may have authorized, negligently supervised and/or ratified each act of each remaining Defendant, and that each Defendant may be the alter ego of each of the remaining Defendants.  Plaintiff is informed, believes, and thereon alleges that Defendants, and each of them, were and are responsible for the acts causing Plaintiff damages as hereinafter alleged.

5.     Plaintiff began his employment on or about June 24, 2011 as a District Area Loss Prevention Manager for Defendant's retail organization.  At all times during his employment, Plaintiff was wrongfully classified as exempt from overtime.

6.     Upon his hire, Plaintiff was required to work a minimum of 10 hours a day in one of sixteen stores to which he had been assigned, as well as spend additional hours traveling amongst those stores.  During his employment, Plaintiff's responsibilities increased to include responsibility for twenty-two stores.

7.     Plaintiff spent approximately twenty percent of this time walking around his various assigned locations looking for any loss prevention issues (e.g., shoplifting) and/or safety issues.  When on the floor, Plaintiff was also responsible for customer service and sales.

8.     Plaintiff spent approximately fifty percent of his work time looking at transactional records of sales that Defendant's corporate office identified as suspicious.  Plaintiff was responsible for utilizing routine procedures to review these documents to see if an actual loss occurred.  Plaintiff had little influence over how his daily activities were to be performed and at no time did Plaintiff perform work that was managerial, administrative or professional over fifty percent of his work day.

9.     On or about June 30, 2016, Plaintiff was informed that he was being terminated. Plaintiff was given a document entitled "Associate Disciplinary Notice" that purports to give detailed reasons for his termination. This notice listed several acts of "improper conduct". The document also wrongfully stated that Plaintiff had "failed to be forthright in his information" to his supervisor by acting in an inappropriate manner and by utilizing bad judgment. Defendant later admitted and agreed to remove several inaccuracies in the Notice.

10.    Still, Defendant has stated in writing that Plaintiff "failed to demonstrate" integrity and "misrepresented facts" regarding an investigation.

11.    Plaintiff has a Bachelor of Science depress in Criminal Justice and has put himself through the Sacramento County Sheriff's Department Academy in 2009 earning him a POST academy graduate certificate. Plaintiff had long pursued a career in law enforcement, which requires him to disclose if he has been terminated and the reason for the termination.

12.    Defendant's termination documents are defamatory as they accuse Plaintiff of purposefully misrepresenting information to his employer. Due to a requirement to self-publish this defamatory information, Plaintiff has to say that he was terminated for lack of integrity. Plaintiff's career in law enforcement has been significantly damaged as a result of his required self-publication.

## FIRST CAUSE OF ACTION

### Breach of Labor Code: Failure to Pay Overtime Wages

13.    Plaintiff incorporates by reference, as if fully set forth herein, the provisions of paragraphs 1 through 12 of this Complaint.

14.    The Labor Code authorizes the IWC to promulgate orders regulating wages, hours and working conditions throughout California. The overtime orders establish daily and weekly overtime requirements for nonexempt employees. Because Plaintiff was not primarily engaged in work that was exempt, he is owed one and one-half times his hourly rate for overtime hours worked in excess of either eight hours a day or forty hours a week.

15. California Labor Code § 1194 allows that any employee receiving less than the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of the overtime compensation owed.

16. Plaintiff is entitled to recover from Defendant, pursuant to California Labor Code §1194 and §1194.2, all unpaid overtime and an additional amount as liquidated damages. Plaintiff is also entitled to recover reasonable attorneys' fees, and costs of the action.

WHEREFORE, Plaintiff prays judgment against Defendant as hereinafter set forth.

## SECOND CAUSE OF ACTION

### Breach of Labor Code:

### Failure to Pay All Wages Owed and Waiting Time Penalties

17. Plaintiff incorporates herein, as though fully set forth at length, each and every allegation set forth in paragraphs 1 through 16 of this Complaint as if fully set forth herein.

18. Defendant has failed to pay Plaintiff all of his compensation owed based on hours worked during his employment, including overtime hours and on call hours. Defendant knew that the compensation was owed, and refused and continues to refuse to compensate Plaintiff accurately for services rendered to Defendant.

19. In addition to the money owed for services rendered, Plaintiff is entitled to recover from Defendant, pursuant to the California Labor Code section 201 and 203, an additional amount as a waiting-time penalty. In addition, Plaintiff is entitled to recover an award for reasonable attorneys' fees to be paid by the Defendant, and the costs of the action.

WHEREFORE, Plaintiff prays judgment against Defendant as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### Breach of Labor Code: Failure to Provide Accurate Information on Wage Statements

20. Plaintiff incorporates by reference, as if fully set forth herein, the provisions of paragraphs 1 through 19 of this Complaint.

21. Pursuant to California Labor Code §226, California employers are required to provide every employee with an accurate wage statement that sets forth the employee's gross

wages, total hours worked, all deductions taken, net wages earned, amongst other things. Plaintiff did not receive accurate information on her paycheck stubs for many reasons, including the fact that they failed to accurately show his actual hours worked.

22.     Plaintiff is entitled to a penalty of: (1) $50 for the initial pay period in which a violation occurs and $100 per employee per pay period for each additional violation up to $4,000 plus an award of reasonable attorney's fees and costs.

WHEREFORE, Plaintiff prays judgment against Defendant as hereinafter set forth.

## FIFTH CAUSE OF ACTION
### Defamation

23.     Plaintiff hereby incorporates by reference Paragraphs 1 through 22 of this Complaint as if fully set forth herein.

24.     Plaintiff is informed, believes, and on that basis, alleges that in or about the June 2016, and thereafter, Defendant's employees falsely and without privilege orally uttered and published to others that Plaintiff was terminated due to a lack of integrity.  This falsehood has been repeated to others, and Plaintiff has been exposed to contempt, which caused, and has caused, Plaintiff to be injured in his occupation and reputation.

25.     As a direct and proximate result of Defendant's outrageous and defamatory conduct, as set forth above, Plaintiff has suffered and will continue to suffer damages, the exact amount of which has not yet been fully ascertained.  Plaintiff is entitled to damages, including, but not limited to, general damages, loss of profits, benefits, and certain other damages and incidental and consequential expenses in the amount to be shown at the time of trial..

WHEREFORE, Plaintiff prays judgment against Defendant as follows:

1.     For compensatory damages in an amount to be proven at trial.

2.     For special damages in an amount to be proven at trial.

3.     For general damages in an amount to be proven at trial.

4.     For punitive damages in an amount to be proven at trial.

5.     For interest on Plaintiff's compensatory damages at the maximum rate allowed by law.

6.    For reasonable costs.

7.    For jury trial.

8.    For attorney's fees and costs.

9.    For such other and further relief as this Court deems just and proper.

Dated:  March 14, 2017

HENK LEONARD
A Professional Law Corporation

SHERI L. LEONARD
Attorney for Plaintiff
TAYLOR MAGAZINER

# EXHIBIT B

1
KATE S. GOLD (SBN 156117)
Kate.Gold@dbr.com

2
DRINKER BIDDLE & REATH LLP
1800 Century Park East

3
Suite 1500
Los Angeles, CA  90067-1517

4
Telephone:      (310) 203-4000
Facsimile:       (310) 229-1285

5

6
JAIME D. WALTER (SBN 281066)
Jaime.Walter@dbr.com

7
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105-2235

8
Telephone:      (415) 591-7500
Facsimile:       (415) 591-7510

9

10
Attorneys for Defendant
BED BATH & BEYOND INC.

11
SUPERIOR COURT OF THE STATE OF CALIFORNIA

12
COUNTY OF PLACER

13

14
TAYLOR MAGAZINER,

15
                              Plaintiff,

16
              v.

17
BED BATH & BEYOND, INC., and
DOES 1 through 5, inclusive,

18

19
                              Defendants.

Case No. SCV0039281

**NOTICE TO SUPERIOR COURT OF BED BATH & BEYOND INC.'S REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

Complaint Filed:  March 20, 2017
Trial Date:  None Set

20

21

22

23

24

25

26

27

28

89030979.1

NOTICE TO SUPERIOR COURT OF BED BATH & BEYOND INC.'S REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1  TO THE CLERK OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE

2  COUNTY OF PLACER:

3      Attached hereto as Exhibit "A" is a true and correct copy of Bed Bath & Beyond Inc.'s

4  Notice of Removal and Removal of Civil Action to Federal Court, the original of which was filed

5  with the United States District Court for the Eastern District of California on June 29, 2017.

6  Dated: June 29, 2017            DRINKER BIDDLE & REATH LLP

7

8                                   By:_____

9                                      Kate S. Gold
                                       Jaime D. Walter

10                                     Attorneys for Defendant
                                       BED BATH & BEYOND INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

89030979.1

- 2 -

NOTICE TO SUPERIOR COURT OF BED BATH & BEYOND INC.'S REMOVAL OF CIVIL ACTION TO FEDERAL COURT

**PROOF OF SERVICE**

I, Nydia C. Avellan, am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 50 Fremont Street, 20th Floor, San Francisco, California 94105-2235. On June 29, 2017, I caused a true and correct copy of the within documents to be served:

- **NOTICE TO SUPERIOR COURT OF BED BATH & BEYOND INC.'S REMOVAL OF CIVIL ACTION TO FEDERAL COURT**

☒    **By United States mail:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at San Francisco, CA addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

ROBERT P. HENK                    *Attorneys for Plaintiff Taylor Magaziner*
SHERI L. LEONARD
HENK LEONARD
A Professional Law Corporation
2260 Douglas Blvd., Suite 200
Roseville, CA 95661
Tel: (916) 787-4544
Fax: (916) 787-4530

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on June 29, 2017, at San Francisco, California.

Nydia C. Avellan

# EXHIBIT C

Smith vs. Orange Blossom Lines Inc., 12 Trials Digest 3d 66 (1998)

Case 2:17-cv-01339-KJM-AC   Document 1-2   Filed 06/29/17   Page 16 of 50

12 Trials Digest 3d 66, 1998 WL 866029 (Cal.Superior) (Verdict and Settlement Summary)

Copyright (c) 2015 Thomson Reuters/West
Superior Court, Los Angeles County, California.

Smith vs. Orange Blossom Lines Inc.

**TOPIC:**
Synopsis: Army officer's career ruined by allegations of misconduct

Case Type: Defamation; Libel; Private Publication; Defamation; Slander; Intentional Torts; Infliction of Emotional Distress

DOCKET NUMBER: YC029244

STATE: California
COUNTY: Los Angeles

Verdict/Judgment Date: September 25, 1998

JUDGE: Jean E. Matusinka
**ATTORNEYS:**
Plaintiff: Seth M. Goldberg, Bleau, Fox & Goldberg, Los Angeles.; Kurt A. Schlichter, Law Offices of Kurt A. Schlichter, Manhattan Beach.
Defendant: Jack Daniels, Daniels, Baratta & Fine, Los Angeles.

**SUMMARY:**
Verdict/Judgment: Plaintiff

Verdict/Judgment Amount: $3,049,912

Range: $2,000,000-$4,999,999
$1,824,512 economic and $924,200 non-economic damages and $250,000 punitive damages (versus Orange Blossom Lines Inc.).

Trial Type: Jury

Trial Length: 8 days.

Deliberations: 5 hours.

Jury Poll: Mixed poll.

**EXPERTS:**
Plaintiff: Raymond G. Schultz Ph.D., economist, IBAR Settlement Co. Inc., San Marino, (626) 570-4888.; William V. Wenger, military consultant, El Segundo.
Defendant: John C. Bahnesen Jr., retired brigadier general, New Cumberland, WV, (304) 387-2199.; John Richard Haluck, attorney/military consultant, The Diepenbrock Law Firm, Sacramento, (916) 446-4469.; Kip Jones CPA, economist, Jones, Borghart & Co., Los Angeles, (213) 621-7780.

Smith vs. Orange Blossom Lines Inc., 12 Trials Digest 3d 66 (1998)

Case 2:17-cv-01339-KJM-AC   Document 1-2   Filed 06/29/17   Page 17 of 50

**TEXT:**

**CASE INFORMATION**

**FACTS/CONTENTIONS**

According to Plaintiff: Plaintiff brought suit for libel, libel per se, slander, slander per se and intentional infliction of emotional distress. Plaintiff claimed that defendants were responsible for a letter accusing plaintiff of allowing his troops to use marijuana and alcohol and cause damage to a bus that carried the troops to training. As a result of the charges plaintiff's career was destroyed. The plaintiff was Russell A. Smith, a 35-year-old United States Army officer. The defendant was Orange Blossom Lines Inc., a bus company; Dennis Ardecki, the vice president of Orange Blossom Lines Inc.; and Roland Ramos, a bus driver employed by Orange Blossom Lines.

Plaintiff is an officer in the United States Army. At the time of the defamation he was assigned to the California Army National Guard as the commander of Company C, 3-160 Infantry. It is the practice of the California Army National Guard to use commercial bus companies to transport soldiers to and from training sites throughout California. Defendant Orange Blossom Lines Inc. was one of those bus companies. Orange Blossom Lines was hired to transport elements of 3-160 Infantry Battalion to and from Camp Roberts for their training weekend.

On June 21, 1996 Roland Ramos picked up C, 3-160 Infantry for transport to Camp Roberts. The buses traveled directly from Inglewood to Camp Roberts. Accompanying plaintiff on the bus to Camp Roberts were CPT Jodie Marsh, 3-160 Infantry personnel officer; 1LT Edward Hooks, executive officer for Company C, 3-160 Infantry; and 1LT Bradford Cook. Also on the bus were SSG Felipe Gonzales, SSG Timothy Colson and SGT Alphonse Mendoza, whose full-time jobs were as police officers in the LAPD. Plaintiff slept the entire way to Camp Roberts. Hooks was awake for the entire trip and used the restroom on the bus at least six times during the trip. The trip took approximately six hours.

On June 22, 1996 all soldiers of the battalion were administered an unannounced urinalysis test for drug use. None of the members of Company C tested positive for any illegal substances. On June 23, 1996 Company C departed Camp Roberts at 11:50 a.m. and arrived in Buttonwillow at 1:15 p.m. at the McDonald's for lunch. Plaintiff's first indication that there might be any trouble was when SSG Felipe Gonzalez informed him that Ramos had locked the bathroom door and would not give him the key because Ramos thought soldiers were smoking marijuana in the bathroom. Plaintiff then approached Ramos with Hooks and Gonzalez and said 'No one is smoking pot on your bus. I have three LAPD officers on that bus.' Ramos responded 'Is Gonzalez one of the officers?' When plaintiff answered 'Yes,' Ramos said 'Oh no. He's one of the ones I wouldn't give the key to.' Plaintiff requested that Ramos unlock the door. When plaintiff boarded the bus again, he noticed that Ramos did not unlock the bathroom door and that he required soldiers to get the key from him and return it when finished. The bus arrived in Inglewood at 4:30 p.m., was inspected by Hooks, cleaned by the soldiers and reinspected before it left the Inglewood Armory. Hooks did not find marijuana, vomit, empty alcohol bottles or anything unusually wrong with the bus. He did find sunflower seeds and ordered the bus swept clean. Plaintiff then dismissed the entire incident as inconsequential.

On June 28, 1996 defendant Ardecki wrote a defamatory letter accusing plaintiff of allowing his soldiers to smoke marijuana on the bus with his full knowledge and consent. Essentially, the letter accused plaintiff of no less than four felony charges under the Uniform Code of Military Justice, specifically: (1) Article 112(b)(1), failing to report drug use by his soldiers; (2) Article 133, conduct unbecoming an officer; (3) Article 92, violating an order or regulation; and (4) Article 134, general rule regarding good order and discipline. Each charge could have resulted in a prison sentence and/or dismissal from the service. Ardecki addressed the letter and sent it to three separate locations, each of which had no interest in receiving the letter.

The address on the letter heading was to the Department of the Army, Transportation Operations, U.S. Army Finance & Accounting Center in Indianapolis, Indiana. This unit or arm of the government had no legal or command authority over plaintiff or the California Army National Guard units. All that occurred in Indianapolis was the processing of payments to civilian vendors, among other accounting operations. They could not impose discipline. The letter was 'cc' to 'USPFO of California Helen Starling' and Inglewood Armory.' USPFO (United States Property and Fiscal Office[r]) controlled the funds used to support the National Guard units in California. Helen Starling was a clerk

Smith vs. Orange Blossom Lines Inc., 12 Trials Digest 3d 66 (1998)

Case 2:17-cv-01339-KJM-AC   Document 1-2   Filed 06/29/17   Page 18 of 50

at USPFO who coordinated when, where, who and how commercial buses and bus companies were used by the government. Neither USPFO or Helen Starling had legal or command authority over plaintiff or the California Army National Guard units. They could not impose discipline. The letter was also sent to 'Inglewood Armory,' not to the commander of 3-160 Infantry. Anybody at the armory could have opened the letter and, in fact, it was opened by an individual who had no interest in the communications contained therein. The only person who could have had an interest in the communications in the letter was plaintiff's commanding officer.

Two official investigations conducted by the Army concluded that the allegations of misconduct were unsubstantiated, that the claim for $200 be denied and that the military refrain from doing business with Orange Blossom Lines Inc. In December 1995 plaintiff had been selected for a promotion to major. Upon publication of the letter plaintiff's personnel file was 'flagged' (no favorable actions permitted) for almost 11 months while the investigations were conducted. As a result plaintiff lost several prestigious positions in the military and his promotion was delayed with a resulting loss in future pension benefits.

Plaintiff alleged that defendants were responsible for the initial publication of the letter which caused plaintiff to be denied a timely promotion to major; to lose a very prestigious career enhancing position with the Inspector General; to lose a very prestigious career enhancing position as a congressional fellow because he was not a major; to lose a career enhancing position as a student at the United States Army Command and General Staff College and a second pass-over as a congressional fellow; to lose the 11 months' time in grade; and assuming that his life expectancy was 70 years, the loss of those monies from the time of July 1996.

Plaintiff also alleged that the letter and the events described therein was a fabrication by defendants. None of the events occurred. Upon arrival at Camp Roberts, the bus was clean and was clean when it left the Inglewood Armory at the end of the weekend. The $200 cleaning fee was fraudulently charged to the government because Orange Blossom Lines Inc. did not reimburse its drivers for any time incurred in cleaning buses that were dirtied by customers. Further, the qualified privilege did not apply because the letter was sent with malice. Ardecki affected the widest possible dissemination of the allegations. He did not conduct an investigation into the allegations made by Ramos and did not interview Ramos or question him in detail. Ardecki did not call or speak to any of the soldiers or officers of 3-160 Infantry, let alone plaintiff, about what allegedly occurred on the bus; and he did not speak to any of his other bus drivers about what allegedly occurred. Ardecki testified under oath that he expressed doubt as to the veracity of Ramos when he questioned him on no less than three occasions. The only persons with legal or command authority over plaintiff were his battalion commander, his brigade commander or the division commander.

Defendants contended that the charges were true and that the incident occurred. However, assuming arguendo that it did not occur, defendants contended that the qualified privilege of Civil Code section 47(c) applied.

## CLAIMED INJURIES

According to Plaintiff: Damage to reputation; emotional distress.

## CLAIMED DAMAGES

According to Plaintiff: $4,400 actual lost income due to 11-month delay in promotion from captain to major; $1,800,000 lost future income and pension/retirement benefits.

## SETTLEMENT DISCUSSIONS

According to Plaintiff: Demand: $600,000 increased to $1,500,000 one month before trial. Offer: None. The court-ordered mediation lasting for four hours with mediator Judge Eric Younger yielded no results.

## EXPERT TESTIMONY

According to Plaintiff: Plaintiff's expert Wenger, a military consultant, testified that plaintiff's career was ruined. Plaintiff's expert Schultz, an economist, testified on plaintiff's lost retirement income. Defense experts Haluck, an

attorney and military expert, and Bahnsen, a military consultant, testified that plaintiff's career was not injured. Defense expert Jones, an economist, testified on earning capacity. Michael I. Neil, an attorney and military expert for the defense, did not testify.

## COMMENTS

According to Plaintiff: The jury poll was 12 to 0 (11 to 1 on some special questions). Plaintiff's counsel Schlichter reported that the jurors indicated they did not believe defendants' testimony. Defendants have filed a motion for new trial and for JNOV. The hearing was scheduled for November 17, 1998. Carolina Casualty was the insurance carrier. Seth M. Goldberg was lead trial counsel for plaintiff. Messrs. Goldberg and Schlichter provided the information in this report.

Trials Digest, A Thomson/West business
Los Angeles County Superior Court/Torrance

---

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT D

FILED/ENDORSED

MAY 2 2 2014

By: _____
DESSIE ROGERS
DEPUTY CLERK

Superior Court of California

County of Sacramento

Case Number: 34-2007-00882286
Department 39

Robert M. Sallustio,
             **Plaintiff**

Judgment on Special Verdicts

vs.

Kemper Independence Insurance
Company,
             **Defendant**

      THIS CAUSE came on regularly for trial on April 1, 2014, through May 9, 2014 in Department 39, of the above entitled court, the Honorable David W. Abbott, Judge, presiding. Plaintiff appeared with his attorneys Christopher H. Whelan, Esq. and Lucas C. Whelan, Esq.; the defendants appeared with their attorneys Mark P. Grajski, Esq. and Lindsay S. Fitch, Esq. of Seyfarth Shaw LLP.

      THEREUPON, a jury of twelve persons was duly accepted, empaneled and sworn to try said cause. Witnesses on the part of Plaintiff Robert Sallustio and Defendants Kemper Independence Insurance Company were duly sworn and examined.

      After hearing the evidence, the arguments of counsel, and instructions of the court, the jury retired to consider their verdict, subsequently returned to court, and being called, answered to their names and rendered their verdict in writing, in words and figures as follows:

      We the jury in the above-entitled matter, answer the questions submitted to us as follows:

      1.     Did any Kemper employee(s) make one or more defamatory statements of fact about Robert Sallustio to others?

        __X__ Yes        _____No

If your answer to question 1 is yes, then answer question 2. If your answer to question 1 is no, then answer no further questions, and have the presiding juror sign and date this form.

2.  Were all the defamatory statement(s) of fact made by Kemper employees about Robert Sallustio substantially true?

_____ Yes _____X__ No

If your answer to question 2 is no, then answer question 3. If you answered yes, then answer no further questions, and have the presiding juror sign and date this form.

3.  Did any Kemper employee who made defamatory statement(s) of fact about Robert Sallustio fail to use reasonable care to determine the truth or falsity of the defamatory statement(s) they made?

___X___ Yes _____No

If your answer to question 3 is yes, then answer question 4. If you answered no, then answer no further questions, and have the presiding juror sign and date this form.

4.  Did any Kemper employee make defamatory statements of fact about Robert Sallustio out of hatred, or ill will, or an intent to injure Robert Sallustio?

___X__ Yes _____No

If your answer to question 4 is yes, then answer question 5. If you answered no, then answer no further questions, and have the presiding juror sign and date this form.

5.  Place an X next to the name of each employee who you find made defamatory statements of fact about Robert Sallustio out of hatred, or ill will, or an intent to injure Robert Sallustio:

_____Brian Delfino

_____Christine Doherty

_X___Coy Jacobs

_____Alan Kikuyama

__X__Scott Tomlinson

_____Stephne (Woodcock) Challender

Answer question 6.

6.      Were the defamatory statements of fact a substantial factor in causing Robert Sallustio actual harm?

        _ X__Yes      ____No

If yor answer to question 6 is yes, then answer questions 7, 8 and 9.  If you answered no, then stop here, answer no further questions, and have the presiding juror sign and date this form.

7.      What are Robert Sallustio's economic damages?

        Past    $ __509,295.00___

        Future  $ __724, 854.00___

8. What are Robert Sallustio's non-economic damages?

        Past    $__500,000.00___

        Future $_____

9.      Has Robert Sallustio proved by clear and convincing evidence that Kemper acted, with malice, oppression or fraud?

        __X___Yes      ____No

Dated: May **6**, 2014          __Sean Burke_____
                                Presiding Juror

After this verdict form has been signed, Please deliver it to the court attendant.

## Punitive Damages

As against defendant Kemper Independence Insurance Company, what amount of punitive damages, if any do you award Robert Sallustio?

_____$3,000,000.00 _____

Dated: May 9, 2014                              __/S/ Sean Burke___
                                                Presiding Juror/Foreperson


WHEREFORE, by virtue of the law and by reason of the premises aforesaid, it is ordered, adjudged and decreed that Plaintiff ROBERT SALLUSTIO have and recover from Defendant Kemper Independence Insurance Company the sum of ONE MILLION SEVEN HUNDRED THIRTY FOUR THOUSAND, ONE HUNDRED FORTY NINE Dollars ( $1,734,149.00) with interest thereon at the rate of ten percent per annum from the date hereof until paid, together with said plaintiff's interest, costs and disbursements incurred in this action, amounting to the sum of $_____.


AND, WHEREFORE, by virtue of the law and by reason of the premises aforesaid, it is ordered, adjudged and decreed that Plaintiff ROBERT SALLUSTIO have and recover from Defendant Kemper Independence Insurance Company, punitive damages in the amount of THREE MILLION Dollars ($3,000,000.00) with interest thereon at the rate of ten percent per annum from the date hereof until paid, together with said plaintiff's interest, costs and disbursements incurred in this action, amounting to the sum of $_____.


Dated: 5-22-2014     _David W. Abbott_____

Honorable David W. Abbott
Judge of the Superior Court of California, County of Sacramento

# EXHIBIT E

1   CHRISTOPHER H. WHELAN, INC.
    Christopher H. Whelan, Esq. - SB 080823
2   11246 Gold Express Drive, Suite 100
    Gold River, California 95670
3   Phone:   (916) 635-5577
    Fax:     (916) 635-9159
4
    Attorneys for Plaintiff, ROBERT M. SALLUSTIO
5

FILED
Superior Court Of California,
Sacramento

Dennis Jones, Executive
Officer
12/04/2007
awoodward
By _____, Deputy
Case Number:
34-2007-00882286-CU-WT-GDS

6
7                  SUPERIOR COURT OF THE STATE OF CALIFORNIA
8                              COUNTY OF SACRAMENTO

                                                    DEPARTMENT 24
9

10  ROBERT M. SALLUSTIO,                )   No.
                                        )
11          Plaintiff,                  )   **COMPLAINT FOR:**
                                        )
12      v.                              )   (1) Employment Discrimination -
                                        )       Retaliation (Government Code §12940,
13  KEMPER INDEPENDENCE                 )       et seq.); and
    INSURANCE COMPANY, UNITRIN          )   (2) Tortuous Wrongful Termination in
14  KEMPER AUTO AND HOME                )       Violation of Public Policy
    INSURANCE, ALAN KIKUYAMA,           )   (3) Defamation
15  BRIAN DELFINO, SCOTT                )
    TOMLINSON, COY JACOBS and           )   [Damages Exceed $25,000]
16  DOES 1 THROUGH 50, INCLUSIVE,       )
                                        )   JURY TRIAL DEMANDED
17          Defendants.                 )
                                        )
18  _____  )

19

20      Plaintiff, ROBERT M. SALLUSTIO, hereby alleges against Defendants, and DOES 1 through

21  50, inclusive, as follows:

22                              **INTRODUCTION**

23      1.      Plaintiff ROBERT M SALLUSTIO [hereinafter "SALLUSTIO" or "Plaintiff"] was

24  a dedicated and excellent 28 year employee of Defendants KEMPER INDEPENDENCE

25  INSURANCE COMPANY [hereinafter "Defendant" or  "DEFENDANT EMPLOYER" or

26  "KEMPER"] and UNITRIN KEMPER AUTO AND HOME INSURANCE [hereinafter "Defendant"

27  or "DEFENDANT EMPLOYER" or  "UNITRIN KEMPER"] and their predecessors at  their

28  Folsom, California office in Sacramento County  SALLUSTIO had an excellent employment history

                                          1

1  with DEFENDANT EMPLOYERS before he refused to discriminate against and fail to

2  accommodate a disabled employee. As a result of Plaintiff's complaints about Defendant

3  Employers' disability discrimination, failures to accommodate, failures to engage in a good faith

4  interactive process with disabled employees to determine accommodations, and because of Plaintiff's

5  refusals to engage in this illegal activity, he was retaliated against by shunning, being subjected to

6  false and defamatory criticism of his performance as justification for his termination in violation of

7  public policy.

8     2.     The disabled employee who was being discriminated against and not accommodated

9  was Nancy Sallustio, a Marketing Specialist and a 18 year employee of DEFENDANT

10  EMPLOYERS, and the wife of Plaintiff, Robert M. Sallustio. Nancy Sallustio [hereinafter "Mrs.

11  Sallustio"] was suffering from a stress related disability, and at one point on stress related leave

12     3.     Plaintiff is informed and believes that Defendant ALAN KIKUYAMA [hereinafter

13  "KIKUYAMA"], the Western Region Marketing VP and Mrs Sallustio's supervisor, is a resident

14  of California. Plaintiff is informed and believes that DEFENDANT EMPLOYERS and

15  KIKUYAMA retaliated against Plaintiff for his opposition to Defendants' and each of their plan to

16  not allow Mrs. Sallustio to return to work, to end her employment because of her disability, and to

17  refuse to either accommodate her, or enter into any good faith interactive process to find

18  accommodations. KIKUYAMA also defamed Plaintiff as part of Defendants' and each of their plan,

19  intent and roles to retaliate against, and terminate Plaintiff.

20     4.     Plaintiff is informed and believes that Defendant COY JACOBS [hereinafter

21  "JACOBS"], the Technical Manager for DEFENDANT EMPLOYERS, and eventual replacement

22  for Plaintiff, is a resident of California. JACOBS defamed Plaintiff as part of Defendants' and each

23  of their plan, intent and roles to retaliate against, and terminate Plaintiff.

24     5.     Plaintiff is informed and believes that Defendant BRIAN DELFINO [hereinafter

25  "DELFINO"], a resident of California and Vice President of Claims for DEFENDANT

26  EMPLOYERS, defamed Plaintiff, as described below, as part of DEFENDANT EMPLOYERS' and

27  each of their plan to retaliate against, defame and terminate Plaintiff.

28  / / /

2

6.      Plaintiff is informed and believes that Defendant SCOTT TOMLINSON [hereinafter "TOMLINSON "], a resident of California and Vice President of Human Resources for DEFENDANT EMPLOYERS defamed Plaintiff, as described below, as part of DEFENDANT EMPLOYERS' and each of their plan to retaliate against, defame and terminate Plaintiff.

7.      Plaintiff filed complaint(s) with the Department of Fair Employment and Housing and has received and/or is entitled to the right to sue letter(s) as of the filing and/or service of this complaint. Plaintiff incorporates herein, each and every allegation within Plaintiff's DFEH complaint(s), as though fully stated herein.

## GENERAL ALLEGATIONS

8.      The true names and capacities of the Defendants named herein as DOES 1 through 50, inclusive, whether individual, corporate, associate, or otherwise, are unknown to Plaintiff who therefore sues such Defendants by fictitious names pursuant to Code of Civil Procedure §474. Plaintiff is informed and believes that DOE Defendants 1 through 50 are California residents and/or partners, parents, subsidiaries, and/or sister corporations to DEFENDANT EMPLOYER, and/or individuals responsible for the acts complained of herein. Plaintiff will amend this Complaint to show such true names and capacities when they have been determined   Plaintiff alleges all known and unknown Defendants, and all named Defendants, including corporate and individual Defendants and their parents, subsidiaries, their successors in interest, partners, and their employees and/or agents, acted on behalf of, and for the benefit of, at the direction of, and under the control of, and in conspiracy with, each and every Defendant, known or unknown, and their agents and/or employees, and each of them, to do the acts complained of herein.

9      Plaintiff is informed and believes and thereon alleges that each of the Defendants sued herein as a  DOE is responsible in some manner and liable herein for negligent, wanton, reckless, and tortious conduct, strict liability, and by such wrongful conduct complained of herein, proximately caused the Plaintiff's injuries and damages.

10.      At all times mentioned herein, Plaintiff was and is a resident of California and worked in DEFENDANT EMPLOYERS' Folsom, California office in the County of Sacramento, State of California.

3

1    11.     Defendants KEMPER INDEPENDENCE INSURANCE COMPANY, and UNITRIN

2  KEMPER AUTO AND HOME INSURANCE, collectively referred to as "DEFENDANT

3  EMPLOYERS" and DOES 1 through 20, were corporations, associations, partnerships, joint

4  ventures, predecessors, successors, or other business entities, organized and existing under the laws

5  of an unknown state and at all times herein mentioned conducted business in the State of California,

6  and throughout the County of Sacramento, including  their Folsom, California  location where

7  Plaintiff was employed.

8    12.     Defendants DOES 21 through 50, were individuals who were the agents, employees,

9  members, volunteers, servants, partners, representatives, independent contractors, joint venturers or

10  other participants of, or with, Defendants KEMPER and UNITRIN KEMPER, and DOES 1 through

11  50 in doing the things hereinafter mentioned, were acting within the course and scope of said agency,

12  employment, membership or other relationship with said Defendants. At all times herein mentioned,

13  Defendants  DOES 21 through 50 were employees and/or agents of Defendants KEMPER and

14  UNITRIN KEMPER and  held supervisory and managing agent positions with KEMPER and

15  UNITRIN KEMPER.

16    13.     At all times herein mentioned, Defendants, whether or not specifically identified or

17  designated herein as a DOE, and each of them, were the agents, employees, servants, partners,

18  independent contractors, joint venturers and participants with all other Defendants, and with each

19  other, in doing the things hereinafter mentioned, were agents, employees, managing agents, servants,

20  partners, joint venturers, with the consent and permission of the Defendants, and each of them.

21    14.     Plaintiff names said Defendants herein, and each of them, as DOES because Plaintiff

22  is in doubt and does not know exactly from which of the said Defendants Plaintiff is entitled to

23  redress in light of the fact that the injuries and damages to Plaintiff herein alleged were caused by

24  the combined conduct, speech, illegal acts, negligence of all of the Defendants, their agents,

25  managing agents, or one or more of them  For that reason, Plaintiff names all of the said Defendants,

26  and asks that the Court determine the liability of each and all of the said Defendants in this action

27  and to what extent and what responsibility falls upon each of said Defendants, and that the Court

28  / / /

1 award judgment to Plaintiff as against such or all Defendants, either jointly or separately, as may be

2 found liable.

3 ### FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

4       15.      On or about June 21, 2006, Nancy Sallustio, Plaintiff's wife and a very qualified 18

5 year employee of DEFENDANT EMPLOYERS took a stress related disability leave from her

6 position as a Marketing Specialist.  In July 2006,  Mrs. Sallustio requested that DEFENDANT

7 EMPLOYERS accommodate her stress disability by allowing her to do her job from home, which

8 was not uncommon for DEFENDANT EMPLOYERS' employees. In fact, a number of employees

9 of DEFENDANT EMPLOYERS performed the same or similar marketing duties from their home

10 offices  Christine Doherty from the DEFENDANT EMPLOYERS' Human Resources department

11 denied  this  reasonable  accommodation  for  unspecified  reasons  Instead  DEFENDANT

12 EMPLOYERS presented Nancy Sallustio with a termination agreement. She refused this attempt to

13 terminate her  and asked that she be allowed to complete her disability leave and return to her

14 position. Despite her repeated subsequent requests for accommodations, the DEFENDANT

15 EMPLOYERS made no further attempt to accommodate her, to help her return to the workforce, or

16 to return her to her position that remained open

17       16.      In July 2006, Mrs  Sallustio again asked and was refused an accommodation of

18 working from home. In August 2006, management offered Mrs. Sallustio a severance package  in

19 an attempt to get rid of her and avoid accommodating her disability. She was advised by upper

20 management that it would be in her and the DEFENDANT EMPLOYERS' best interest if she took

21 the package and not return to work. At no time did the DEFENDANT EMPLOYERS work with

22 Mrs. Sallustio to return to the workplace or engage in any good faith interactive process to discover

23 and agree upon an accommodation for her disability.

24       17.      On September 26, 2006, Christine Doherty informed Mrs. Sallustio that her position

25 was being filled.  However, in fact, although that position was posted no one applied for it or

26 accepted it and the position remained open.

27       18.      In October 2006, Mrs  Sallustio's medical benefits were discontinued without any

28 medical  opinion  or  documentation  to  support  the  decision.  Glen  Lyons,  DEFENDANT

1   EMPLOYERS' local Human Resources manager, solicited Tricia Lauer to interview for

2   Mrs Sallustio's position.

3        19.    In early November 2006, Human Resources offered Mrs. Sallustio's position to a

4   claims clerk, Tricia Lauer, who had no experience in marketing. She was interviewed by Glen Lyons

5   the HR manager, and Linda Corrao, the Marketing manager  This attempt to fill Mrs. Sallustio's

6   position was contrary to DEFENDANT EMPLOYERS' policy and practice of offering positions

7   to the most qualified. If this policy and practice had been followed this position should have been

8   offered to Mrs. Sallustio. Furthermore, there were a number of positions in claims for which this

9   clerk, Tricia Lauer, had experience and training, and these were the positions that policy, practice

10   and logic said should have been offered to Tricia Lauer.  Mr. Lyons and Linda Corrao informed

11   Plaintiff that this position was going to be offered to the inexperienced Ms. Lauer  Plaintiff voiced

12   strong opposition for the above stated reasons. Furthermore, he let them know that he believed these

13   steps were being taken to keep a disabled person from the workplace. He informed them

14   DEFENDANT EMPLOYERS had an obligation and prior practice to fill open positions with the best

15   qualified candidate  Tricia Lauer  had no marketing experience and she was the only person

16   interviewed. As the Claims manager Plaintiff was aware of several claims positions that needed to

17   be filled by someone like Tricia Lauer, who was qualified for a claims position, not a marketing

18   position.

19        20    In this conversation Plaintiff let Glen Lyons and Linda Corrao know that he would

20   be contacting his boss, BRIAN DELFINO, VP of Claims, to authorize a counter offer to Tricia

21   Lauer. This counter offer was for a position as Assistant Claims Clerical Supervisor, as Lauer was

22   being developed to replace Cathy Richmond, the Claims Clerical Supervisor, who planned on

23   retiring in the near future.  Glen Lyons stated he strongly disapproved of this logical placement of

24   Tricia Lauer.  Plaintiff said he would let his supervisor, BRIAN DELFINO, decide how this should

25   be handled

26        21.    Lauer was offered Mrs. Sallustio's position in marketing.  Lauer informed Plaintiff

27   that she really did not want that position. Plaintiff sought and obtained Mr DELFINO's permission

28   to offer Lauer a more appropriate position in claims as the Assistant Clerical Supervisor  Plaintiff

6

1    informed KIKUYAMA, the Western Region Marketing VP and Mrs. Sallustio's supervisor, that

2    DELFINO had approved offering the claims position to Lauer and that she can make the call between

3    the two offers   Plaintiff offered Lauer the Claims Assistant Clerical Supervisor position in claims

4    and he asked her to consider both positions.

5        22.        On November 6, 2006, Lauer informed Plaintiff that she was rejecting the marketing

6    position that was Mrs. Sallustio's and that she accepted the promotion to Claims Assistant Clerical

7    Supervisor. On   November 8, 2006, there was   a company wide announcement of  Lauer's

8    promotion, and on November 13, 2006, Lauer assumed her new duties. No efforts were made to

9    return Mrs. Sallustio to her still unfilled position despite DEFENDANT EMPLOYERS' knowledge

10   of the vacancy, her abilities and experience in that position, the fact that her disability payments had

11   ended, and her request to return to the position,  or be given accommodations so that her return could

12   be achieved.

13       23.        Plaintiff saw management's attempts to fill the marketing position as an attempt to

14   avoid its legal duties to accommodate the disabled and engage in a good faith interactive process to

15   find accommodations for Mrs. Sallustio, and as a method to end her career by terminating her and/or

16   causing her to quit.

17       24.        On November 15, 2006,  KIKUYAMA called Plaintiff into his office and verbally

18   attacked him telling Plaintiff he was "still upset and pissed off" about the situation regarding the

19   open marketing position. Plaintiff saw this unnecessary and unjustified anger and hostility as

20   retaliation for his attempts to fill the open marketing position with a qualified and experienced, but

21   disabled employee, instead of a inexperienced employee who really didn't want the position. Upon

22   KIKUYAMA's request Plaintiff agreed to meet with him and Tricia Lauer on November 17, 2006,

23   to see which position  Ms  Lauer really wanted

24       25.        Plaintiff spoke with Cathy Richmond, his clerical supervisor, and told her that

25   KIKUYAMA was again going to offer Mrs. Sallustio's marketing position to Lauer.  Plaintiff said

26   it was obvious to him that DEFENDANT EMPLOYERS were merely trying to coerce Ms  Lauer to

27   accept the position she had said she did not want to block the position from the disabled

28   Mrs Sallustio.  Plaintiff said it was his belief that these efforts by the DEFENDANT EMPLOYER

1    were unethical and may even be an illegal violation of the rights of disabled employees.

2        26        On November 16, 2006, Mrs Sallustio contacted Christine Doherty in Human

3    Resources and inquired about the possibility of returning to work on November 20, 2006, since she

4    was no longer receiving any disability payments and needed to return to work  Doherty again

5    informed Mrs. Sallustio that it would not be in her best interests or those of the DEFENDANT

6    EMPLOYERS for her to return to work.  Mrs. Sallustio  was misinformed that her position had

7    already been offered to another employee and that it was no longer available.  Doherty told Mrs.

8    Sallustio that she would check with "the powers to be" including  KIKUYAMA and Dorothy

9    Langley, corporate counsel, about her request

10       27.       On November 17, 2006, Plaintiff asked KIKUYAMA if they would be meeting with

11   Lauer that day as planned to discuss the marketing position etc. KIKUYAMA merely said "no"

12   without any further explanation. Jay Beasy, the Asst  VP of Underwriting was also present, but

13   offered no explanation for this change of plans.

14       28.       On November 20, 2006, Plaintiff had a conversation with JACOBS, his tech manager

15   about how the DEFENDANT EMPLOYERS and KIKUYAMA  were mishandling Mrs Sallustio's

16   return to work.  Plaintiff disclosed KIKUYAMA was planning to offer Mrs Sallustio's position to

17   Lauer again, despite the fact that Mrs. Sallustio was trying to return to it.  Plaintiff told JACOBS

18   it was apparent to him that the company was just trying to get Lauer to accept the marketing position

19   so that the disabled Mrs Sallustio couldn't get her job back.  JACOBS responded, "I think you hit

20   the nail right on the head." Plaintiff also told JACOBS how upsetting this conduct was because

21   Plaintiff believed it to be unethical and possibly illegal.

22       29        On November 22, 2006, KIKUYAMA met with Lauer, without Plaintiff as originally

23   planned, and again offered her Mrs Sallustio's marketing position  Lauer came into Plaintiff's

24   office and told him that is was very troubling and confusing for DEFENDANT EMPLOYERS and

25   KIKUYAMA to re-offer her Mrs Sallustio's position, after Lauer had already rejected it and

26   accepted the promotion in claims. Lauer said she wanted to remain in claims. Plaintiff told Lauer

27   to think it all over and do what she thought was best for her  Lauer then sent emails to Plaintiff and

28   KIKUYAMA in which she notified them she was declining to take Mrs. Sallustio's marketing

8

1    position.

2    30    DEFENDANT EMPLOYERS and KIKUYAMA then set out to retaliate against

3    Plaintiff for his insistence that the law be followed in DEFENDANT EMPLOYERS' dealing with

4    the disabled Mrs. Sallustio, including providing her reasonable accommodations, good faith

5    interactive process, not blocking her return to work by filling her position with someone who did not

6    want the position and who was less qualified and experienced.

7    31    On November 28, 2006, termination papers were prepared for Plaintiff's termination

8    in retaliation for his opposition to disability discrimination, and the DEFENDANT EMPLOYERS'

9    failure to accommodate disabled employees, or to engage in a good faith interactive process

10   32.    On December 4, 2006, Plaintiff was terminated based upon false defamatory and

11   pretexual reasons  These false attacks directly injured Plaintiff in respect to his profession, trade and

12   business of being a manager in a major insurance company responsible for the management and

13   supervision of numerous employees  These attacks expressly and impliedly imputed to him general

14   disqualification in respect to those abilities, skills and performance his profession and position

15   required.  Plaintiff was expressly and impliedly accused of incompetence, failure and inability to

16   perform his duties as a result of the publication of false statements such as, his immediate

17   termination was necessary because of his failure of leadership, leadership style, and his not being

18   available to his staff  These statements were published by DELFINO, VP of claims, and Scott

19   TOMLINSON, VP of HR to Plaintiff, and to each other, in this December 4, 2006, termination

20   meeting  Although Plaintiff asked for a detailed explanation and specific examples and the basis

21   for these false accusations used to justify his termination, these managers refused to provide any.

22   Plaintiff was given a termination agreement to sign, which he refused to sign, a termination checklist,

23   and his final paycheck  Plaintiff was not allowed back into the office to retrieve his personal

24   belongings, but was told they would be mailed back to him.

25   33    On December 5, 2006, Mrs. Sallustio obtained a release from her doctor to return to

26   work. She returned to the office to resume performing the duties of her position.  At the time Glen

27   Lyons, DEFENDANT EMPLOYERS' local Human Resources Manager, advised her that even

28   though her position had never been filled, DEFENDANT EMPLOYERS had eliminated the position

9

SALLUSTIO COMPLAINT FOR DAMAGES

1  entirely and converted it to a new position and that the "new position" had been filled    Mrs.

2  Sallustio questioned why she had not been told that her position had been eliminated, or converted

3  into a new position, or filled, but Glen Lyons refused to provide any explanation.

5                        **FIRST  CAUSE OF ACTION**

       **EMPLOYMENT DISCRIMINATION - RETALIATION**

6            **(GOVERNMENT CODE §12940, ET SEQ.)**

7  **Against Kemper Independence Insurance Company, Unitrin Kemper Auto and Home**

        **Insurance, Alan Kikuyama and DOES 1 through 50**

9     34     Plaintiff restates and incorporates by reference each and every allegation contained

10  in the complaint and incorporates them by reference into this cause of action as though fully set forth

11  herein

12    35.    DEFENDANT EMPLOYERS, KEMPER INDEPENDENCE INSURANCE

13  COMPANY, UNITRIN KEMPER AUTO AND HOME INSURANCE, ALAN KIKUYAMA and

14  DOES 1 through 50, and/or their agents/employees, are entities or individuals subject to suit under

15  the California Fair Employment and Housing Act, Government Code §12940, et seq.

16     36     During his employment with DEFENDANT EMPLOYERS, Plaintiff opposed and

17  objected to KEMPER's, KEMPER UNITRIN's and KIKUYAMA's unlawful discrimination, plan

18  to terminate, failure to accommodate, and failure to enter into a timely,  good faith interactive

19  process with a disabled employee to determine effective reasonable accommodations with an

20  employee with a known disability.

21    37.    After Plaintiff voiced his complaints, objections, opposition and refusal to violate

22  the law by participating in, authorizing or ratifying illegal practices described above in violation of

23  Government. Code §12940, et seq. he was subjected to retaliation, harassment and adverse

24  employment actions as described above, including but not limited to: angry attacks, exclusion from

25  key management meetings, denial of Plaintiff's management duties and responsibilities, denial  of

26  DEFENDANT EMPLOYERS' protections, policies and practices, including but not limited to

27  progressive discipline, and counseling, and subjecting Plaintiff to false, pretextual and defamatory

28  criticism misused as a means of retaliation, and to justify Plaintiff's tortious wrongful termination

1    in violation of public policy

2        38.        The foregoing described adverse employment actions, and acts of retaliation taken

3    in part or in whole because of Plaintiff's objections and opposition and resistance to DEFENDANT

4    EMPLOYERS' discrimination against disabled employees,  their refusal of accommodations, and

5    to engage in a timely, good faith interactive process with a disabled employee to determine effective

6    reasonable accommodations.

7        39        In engaging in the aforementioned conduct, Defendants, and each of them, aided,

8    abetted, incited, compelled, and/or coerced unlawful employment practices in violation of the

9    announced policy of this State against such practices

10       40.        The foregoing conduct engaged in by KEMPER, KEMPER UNITRIN and

11   KIKUYAMA and DOES 1 through 50, and each of their directors, officers and/or managing agents,

12   constitutes malice, fraud and oppression and was carried on with a conscious and willful disregard

13   of Plaintiff's right to work in an environment free of unlawful retaliation and acts in violation of

14   Government  Code §12940, et seq, so as to entitle Plaintiff to punitive damages to punish

15   Defendants, and each of them, and set an example of said Defendants. All actions of DEFENDANT

16   EMPLOYERS, their agents and employees,   as herein alleged, were authorized, ratified and

17   approved by the officers or managing agents of DEFENDANT EMPLOYERS  Therefore, Plaintiff

18   is entitled to punitive or exemplary damages against the DEFENDANT EMPLOYERS, in an amount

19   to be determined at the time of trial.

20       41.        As a direct and proximate result of the aforementioned acts and omissions of

21   Defendants, Plaintiff.

22       a.        Has suffered economic damages, including but not limited to a substantial reduction

23                 in past and current income, individual medical and other benefits, and future

24                 earnings, and income potential, and will continue to so suffer in the future, in an

25                 amount to be proved at trial, and

26       b.        Has suffered general damages, in an amount to be proved at trial.

27   ///

28   ///

1    42.    As a proximate result of the foregoing conduct, which violated the provisions of

2  Government Code §12940, et seq., Plaintiff has been forced to and will incur attorney's fees and

3  costs in the prosecution of this claim, in an amount to be proved at trial and/or after trial motions

4    43.    WHEREFORE, Plaintiff requests relief as hereinafter provided

5

6                          **SECOND  CAUSE OF ACTION**
   **TORTUOUS WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

7   **Against Kemper Independence Insurance Company, Unitrin Kemper Auto and Home**
                       **Insurance and DOES 1 through 50**
8

9    44.    As a second, separate, distinct and alternative cause of action, Plaintiff alternatively

10  complains against DEFENDANT EMPLOYERS and DOES 1 through 50, inclusive, and realleges

11  all the allegations contained in the complaint, and incorporates them by reference into this cause of

12  action as though fully set forth herein

13    45    Plaintiff was hired by DEFENDANT EMPLOYERS on November 6, 1978.

14    46.    When Plaintiff was initially hired by DEFENDANT EMPLOYERS, he undertook and

15  continued employment, and duly performed all of the conditions of the above said employment to

16  be performed by Plaintiff until prevented by DEFENDANT EMPLOYERS through their tortuous

17  wrongful termination of Plaintiff on December 4, 2006, in violation of the public policies stated

18  above and expressed in Government. Code §12940, et seq.   DEFENDANT EMPLOYERS' illegal

19  discriminatory conduct, described above, and the unlawful tortious termination of Plaintiff for his

20  opposition to unlawful acts, set out above,  were in violation of the public policy expressed in

21  Government. Code §12940, et seq   including, but not limited to in Government  Code §12940, et

22  seq  12940 (g) and (h).

23    47.    On or about December 4, 2006, DEFENDANT EMPLOYERS and DOES 1 through

24  50, inclusive, breached the total employment agreement by tortuously and wrongfully terminating

25  Plaintiff for the illegal and retaliatory reasons described herein, which were in violation of public

26  policy expressed in Government Code §§ 12900 et seq.

27    48.    As a direct and proximate result of the DEFENDANT EMPLOYERS' tortuous

28  wrongful termination of Plaintiff, he has suffered, and continues to suffer, substantial losses in

                                         12

1    earnings, bonuses, etc., which Plaintiff had a right to and would have received had DEFENDANT

2    EMPLOYERS not breached the agreement. Plaintiff seeks damages for these injuries which exceed

3    the jurisdictional limits of this court and will be established according to proof at trial

4        49.        As a proximate result of this wrongful termination in violation of public policy,

5    Plaintiff was caused to suffer, and continues to suffer, from humiliation, anxiety, severe emotional

6    distress, worry, fear, personal bodily injury and damage and special damages (to include lost

7    earnings), all to his special and general damage according to proof at the time of trial.

8        50.        DEFENDANT EMPLOYERS did the things herein above alleged, intentionally,

9    oppressively, and maliciously with an evil and malevolent motive to injure Plaintiff. These acts,

10   which resulted in Plaintiff's wrongful termination against public policy, were obnoxious, despicable,

11   and ought not to be suffered by any member of the community

12       51.        All actions of DEFENDANT EMPLOYERS as herein alleged, were authorized,

13   ratified and approved by the officers or managing agents of  DEFENDANT EMPLOYERS

14   Therefore, Plaintiff is entitled to punitive or exemplary damages against the DEFENDANT

15   EMPLOYERS, in an amount to be determined at the time of trial.

16       52.        WHEREFORE, Plaintiff requests relief as hereinafter provided.

17

18                       **THIRD   CAUSE OF ACTION**
                              **DEFAMATION**

19
                          **Against All Defendants**
20

21       53.        As a third, separate, and distinct cause of action, Plaintiff complains against all

22   Defendants, and realleges all the allegations contained in the complaint, and incorporates them by

23   reference into this cause of action as though fully set forth herein.

24       54.        Plaintiff is informed and believes Defendants, ALAN KIKUYAMA, COY JACOBS,

25   BRIAN DELFINO, SCOTT TOMLINSON, DEFENDANT EMPLOYERS and DOES 1 through 50,

26   and each of them, by the herein-described acts, conspired to, and in fact, did negligently, recklessly,

27   and intentionally cause excessive and unsolicited internal and external publications of defamation,

28   of and concerning Plaintiff, to third persons and to the community.  These false and defamatory

13

1   statements included express and implied accusations that Plaintiff violated company policies, was

2   a poor performer, was incompetent, an unskilled manager, failed to perform his duties, failed and

3   was incompetent in his leadership and leadership style, failed to be available to his staff, was

4   working only 15-20 hours per week for years, would be hung over from drinking and therefore come

5   to work late or not at all some days, all to the extreme level that Plaintiff's immediate termination

6   was required and necessary

7       55      While the precise dates of these publications are not known to Plaintiff, he heard

8   these express and implied publications published by DEFENDANT EMPLOYERS' agents and

9   employees including DELFINO and TOMLINSON in the December 4, 2006, meeting in which he

10  was terminated, and at other unknown times by KIKUYAMA, and JACOBS and Jay Beasy, the

11  Assistant Vice President of Underwriting, and other agents and employees of DEFENDANT

12  EMPLOYERS unknown at this time. These defamatory publications were used as justification to

13  terminate Plaintiff in retaliation for his opposition to, and refusal to acquiesce to and ratify the illegal

14  acts against disabled employees described herein, and for JACOBS his publications were also used

15  as a means to cause and/or justify the termination of Plaintiff and thereby assist JACOBS in taking

16  over Plaintiff's position. All these publications were outrageous, negligent, reckless, intentional, and

17  maliciously published and republished by Defendants, and each of them   Plaintiff is informed and

18  believes that the negligent, reckless, and intentional publications by Defendants, and each of them,

19  were and continue to be, foreseeably published and republished by Defendants, their agents and

20  employees, and other recipients, in the community.  Plaintiff hereby seeks damages for these

21  publications and all foreseeable republications discovered up to the time of trial, including those

22  republications Plaintiff himself was forseeably forced and compelled to publish.

23      56.     During the above-described time-frame, Defendants, and each of them, conspired to,

24  and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited publication

25  of this defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know.

26  Those third person(s) to whom these Defendants published this defamation are believed to include,

27  but are not limited to, other agents and employees of Defendants, and each of them, and the

28  ///

14

1   community, all of whom are known to Defendants, and each of them, but unknown at this time to

2   Plaintiff.

3       57      The defamatory publications consisted of oral and written, knowingly false and

4   unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business,

5   and professional reputation  These publications included the above described  false and defamatory

6   statements (in violation of Civil Code §§ 45 and 46(3)(5)) with the meaning and/or substance that

7   Plaintiff  violated  company  policies,  that  he  was  such  a  poor  performer,  was  incompetent  in

8   performing his duties, was incompetent in his leadership, leadership style, and failed to be available

9   to his staff, had a drinking problem that interfered with his job performance, all to the extreme level

10  that his immediate termination was required and necessary  These defamatory statements, and each

11  of them, expressly and impliedly asserted that Plaintiff was incompetent, unfit for his position, a

12  poor employee, failed to attend to his duties, worked only 15 to 20 hours per week for 3 years, and

13  missed work as a result of being hung over from abusing alcohol, and that his immediate termination

14  was justified for all these reasons.

15      58      Plaintiff is informed, believes and fears that these false and defamatory per se

16  statements will continue to be published by Defendants, and each of them, and will be  foreseeably

17  republished  by  their  recipients,  all  to  the  ongoing  harm  and  injury  to  Plaintiff's  business,

18  professional, and personal reputations.  Plaintiff also seeks redress in this action for all foreseeable

19  republications, including his own compelled self-publication of these defamatory statements

20      59.     The  defamatory  meaning  of  all  of  the  above-described  false  and  defamatory

21  statements and their reference to Plaintiff, were understood by these above-referenced third person

22  recipients and other members of the community who are known to Defendants, and each of them,

23  but unknown to Plaintiff at this time

24      60.     None of Defendants' defamatory publications against Plaintiff referenced above are

25  true.

26      61.     The above defamatory statements were understood as assertions of fact, and not as

27  opinion. Plaintiff is informed and believes this defamation will continue to be negligently, recklessly,

28  and intentionally published and foreseeably republished by Defendants, and each of them, and

15

1   foreseeably republished by recipients of Defendants' publications, thereby causing additional injury

2   and damages for which Plaintiff seeks redress by this action.

3       62.      Each of these false defamatory per se publications (as set forth above) were

4   negligently, recklessly, and intentionally published in a manner equaling malice. These publications

5   abused any alleged conditional privilege (which Plaintiff denies existed)   All of the publications

6   were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff   These

7   publications were made in order to retaliate against Plaintiff for his opposition against acts that

8   violated public policy expressed in Government Code §§ 12900 et seq. as described above and were

9   used to justify Defendants' illegal, cruel and unjustified termination of Plaintiff   These false and

10  defamatory statements were made to cause further damage to Plaintiff's professional and personal

11  reputation, to cause him to be fired, to falsely justify his firing, to cause him to be shunned by his

12  associates, subordinates,  and other members of the community. These publications were the result

13  of prior ill will, rivalry, and disputes regarding the DEFENDANT EMPLOYERS' failure to comply

14  with the law regarding the proper and legal treatment of disabled employees, and were used to

15  justify the improper and illegal termination of Plaintiff for reasons that violated the public policy of

16  this state

17      63.      Each of these publications by Defendants, and each of them, were made with

18  knowledge that no investigation supported the unsubstantiated and obviously false statements. The

19  Defendants, published these statements knowing them to be false, unsubstantiated by any reasonable

20  investigation, and as the result of information from knowingly hostile witnesses. These acts of

21  publication were known by Defendants, and each of them, to be negligent to such a degree as to be

22  reckless   In fact, not only did Defendants, and each of them, have no reasonable basis to believe

23  these statements, but they also had no belief in the truth of these statements, and in fact knew the

24  statements to be false.  Defendants, and each of them, excessively, negligently, and recklessly

25  published these statements to individuals with no need to know, and who made no inquiry, and who

26  had a mere general or idle curiosity of this information

27      64.      The above complained-of publications by Defendants, and each of them, were made

28  with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good

1  name, his reputation, employment and employability. Defendants, and each of them, published these

2  statements, not with an intent to protect any interest intended to be protected by any privilege, but

3  with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation.

4  Therefore, no privilege existed to protect any of the Defendants from liability for any of these

5  aforementioned publications or republications.

6     65      As a proximate result of the publication and republication of these defamatory

7  statements by Defendants, and each of them, Plaintiff has suffered injury to his personal, business

8  and professional reputation including suffering embarrassment, humiliation, severe emotional

9  distress, shunning, anguish, fear, loss of employment, and employability, and significant economic

10  loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general

11  damage in an amount according to proof.

12     66      DEFENDANT EMPLOYERS, KIKUYAMA, JACOBS, DELFINO and

13  TOMLINSON and DEFENDANT EMPLOYERS, DOES 1 through 50, and each of them, by and

14  through their managing agents and officers committed, authorized, and ratified the acts alleged

15  herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring

16  Plaintiff, for an improper and evil motive amounting to malice (as described above), and which

17  abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and

18  with a reckless and conscious disregard of Plaintiff's rights. All actions of Defendants, and each of

19  them, their agents, employees, managing agents and officers as herein alleged were known,

20  authorized, ratified and approved by the DEFENDANT EMPLOYERS, KIKUYAMA, JACOBS,

21  DELFINO, TOMLINSON, and DOES 1 through 50, and each of them   Plaintiff thus is entitled to

22  recover punitive and exemplary damages from Defendants, and each of them, for these wanton,

23  obnoxious, and despicable acts  in an amount based on the wealth and ability to pay according to

24  proof at time of trial.

25     67      WHEREFORE, Plaintiff requests relief as hereinafter provided.

26  ///

27  ///

28  ///

17

**PRAYER**

**WHEREFORE**, Plaintiff prays judgment against the Defendants, and each of them, as follows·

1.      For pain, suffering, personal injury according to proof;

2.      For general and special damages according to proof;

3.      For loss of earnings and earning capacity, according to proof,

4.      For pre-judgment interest to the extent allowed by law;

5.      For costs of suit incurred herein,

6.      For punitive and/or exemplary damages in an amount to punish Defendants,

7.      For attorney's fees in prosecuting this action, and in obtaining fees in after trial motions; and

8.      For such other and further relief as the Court deems just and proper

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all issues so triable in the Complaint

Dated  November 29, 2007          CHRISTOPHER H. WHELAN, INC.

Christopher H. Whelan
Attorneys for Plaintiff, ROBERT M. SALLUSTIO

18

# EXHIBIT F

# Henk

## Leonard

Employment Law Attorneys

A Professional Law Corporation

Robert P. Henk
Sheri L. Leonard

December 5, 2016

*Rec'd*
*12/13/16*
*JT/MW*

Paul DePrima
Director, Corporate Human Resources
Bed Bath & Beyond Inc.
650 Liberty Ave.
Union, New Jersey 07083

      Re:    *Taylor Magaziner v. Bed Bath & Beyond, Inc.*

Dear Mr. DePrima:

This office represents Mr. Magaziner in the claims he brings related to his employment with Bed Bath & Beyond. Based on the facts related to us by our client as stated below, as well as our independent evaluation of the matter, we believe that he has a valid claim for violation of several of California's wage and hour laws, as well as a defamation claim.

Wage and Hour Claims

Taylor Magaziner began his employment on or about June 24, 2011 as a District Area Loss Prevention Manager. Mr. Magaziner's job required that he conduct both internal and external investigations, conduct training, and assist customers with help on the sales floor. At all times during his employment, Mr. Magaziner performed his job duties in a highly satisfactory manner. At all times during his employment, Mr. Magaziner was wrongfully classified as exempt from overtime.

Upon his hire, Mr. Magaziner was required to work a minimum of 10 hours a day in one of sixteen stores to which he had been assigned, as well as spend additional hours traveling amongst those stores. During his employment, Mr. Magaziner's job duties increased to include responsibility for twenty-two stores. Mr. Magaziner was expected to work, especially during the fourth quarter, between 11:00 a.m. and 4:00 p.m. [5 hours] on the sales floor assisting customers with sales.

Mr. Magaziner spent the majority of his time when not on the shop floor reviewing transaction logs, which he would compare to video recordings. He would interview individuals regarding potential fraud/theft, and would submit his investigation information to his supervisor and, if appropriate, human resources.

California's Wage Order 7, which applied to Mr. Magaziner's job, states as follows: "Such employees shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (11/2) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than: (a) One and one-half (11/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek…"

The only exceptions to the aforementioned wage order requirements are for those who are "employed in administrative, executive, or professional capacities." Thus, the person must work over fifty percent of the time engaged in work which is primarily intellectual, managerial, or creative, and which requires exercise of discretion and independent judgment, as well as earn two times the minimum wage. Mr. Magaziner's job does not meet this exemption under California law. Mr. Magaziner estimates that he owed approximately $70,000 in overtime pay.

Inaccurate Paycheck Stubs

Pursuant to California Labor Code §226, California employers are required to provide every employee with an accurate wage statement that sets forth the employee's gross wages, total hours worked, all deductions taken, and net wages earned, amongst other things. Mr. Magaziner's paychecks were obviously inaccurate, at a minimum, due to the fact that his overtime wages and hours worked were not accurately represented.

Per the aforementioned code section, "An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." Mr. Magaziner is owed the full penalty of $4,000.

Waiting Time Penalties

Mr. Magaziner is also owed an additional amount as he was not paid his overtime wages in full at the ending of his employment. Labor Code section 201(a) states the following: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Labor Code section 203(a) states, "If an employer willfully fails to pay, without abatement or reduction…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

Section 203 is designed to compel the prompt payment of earned wages. *Barnhill v. Robert Saunders & Co.* (1981) 125 Cal.App.3d 1,7. "The reasons for [Section 203's] penalty provision

are clear. Public policy has long favored the full and prompt payment of wages due an employee. Wages are not ordinary debts…Because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay promptly." *Mamika v. Barca* (1998) 68 Cal.App.4th 487, 491-492. It is essential to the public welfare that workers receive their pay when it is due. *In re Trombley* (1948) 31 Cal.2d 801, 809. "Delay of payment or loss of wages results in deprivation of the necessities of life, suffering inability to meet just obligations to others and, in many cases make the wage-earner a charge upon the public." *Kerr's Catering Service v. Department of Industrial Relations* (1962) 57 Cal.2d 319.

It is not necessary to show an "evil purpose" to show "willfulness" under Section 203, but the law is unilaterally clear that the term "willful" simply means that the employer intentionally failed to perform an act which was required to be done. *Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487, 1492. The term willful as used in Section 203 "…amounts to nothing more than this: That the person knows what he is doing, intends to do what he is doing, and is a free agent." *Davis v. Morris* (1940) 37 Cal.App.2d 269, 274.

Mr. Magaziner is owed his regular daily wage rate for thirty days for a violation. Therefore, he is owed $ 6,923 in waiting time penalties.

<u>Defamation</u>

On or about June 30, 2016, Mr. Magaziner was informed that he was being terminated.

At his termination, Mr. Magaziner was given a document entitled "Associate Disciplinary Notice" that purports to give the reason for his termination. This notice listed several acts of "improper conduct". These acts included:

- In May 2016, an employee made a complaint against Mr. Magaziner for actions taken during an investigation. Regarding the aforementioned complaint by the associate against him, the Associate complained that she was not allowed to reach out to her Store Manager during the interview. Also, that when the missing item was found that Mr. Magaziner had not notified his supervisor. In addition, that Mr. Magaziner had "failed to be forthright in his information" to his supervisor regarding the store manager and assistant store manager's account when they reviewed the videotape.
- Mr. Magaziner had inappropriately told Krysten Brinsfield, Assistant Store Manager, to not say anything about their personal relationship.
- Mr. Magaziner had used bad judgment by conducting a records check at the Sacramento Police Department on a Bed Bath & Beyond associate.

Because the aforementioned outline of facts was highly inaccurate and defamatory, Mr. Magaziner contested his termination. After Bed Bath & Beyond was forced to see the blatant errors regarding the written claims it had made, it agreed to remove the allegations regarding Ms. Brinsfield and his conducting a records check at the Sacramento Police Department. Both Ms. Brinsfield and Mr. Magaziner's supervisor at the Police Department gave and/or were willing to

give statements showing that not only was the information put onto Mr. Magaziner's disciplinary form untrue but that no investigation into these claims had ever been made.

Based on Bed Bath & Beyond's placement of several inaccuracies in its "Associate Disciplinary Notice" it created a new one. The new one removed as the reason for Mr. Magaziner's termination that it was based on "improper conduct" and instead outlined that it determined that Mr. Magaziner had told his supervisor that the store manager and assistant store manager agreed with his determination that the video footage against the employee was clear, when in fact it was later determined that they did not agree with Mr. Magaziner's determination.[1] As well as, that Mr. Magaziner had not informed his supervisor when the "stolen" item was found in the store. Mr. Magaziner has always agreed that he had not informed his supervisor about the missing item being found, but that it was a timing issue.

Bed Bath & Beyond determined and stated in writing that Mr. Magaziner had "...failed to demonstrate the level of integrity expected...by misrepresenting the facts surrounding this case. In addition he exercised poor judgment in proceeding to interview the Associate without clearly advising his Supervisor that there was a difference in opinion as to what could be seen on the video footage." Although Mr. Magaziner had never received any discipline in his tenure, the termination notice stated that he had been "spoken to" regarding his approach once in 2013 and once in 2015.

Mr. Magaziner is not contesting his termination via this letter. But, Bed Bath & Beyond has gone out of its way to not just terminate Mr. Magaziner, but to state in writing that he "failed to demonstrate" integrity and "misrepresented facts" regarding an investigation. Had Bed Bath & Beyond not added its after-acquired, fabricated conclusion that Mr. Magaziner lied we would not be writing this letter. But, Mr. Magaziner has a Bachelor of Science depress in Criminal Justice. He put himself through the Sacramento County Sheriff's Department Academy in 2009 and he obtained his POST academy graduate certificate. Mr. Magaziner has a career in law enforcement that requires him, when seeking a job, to disclose if he has been terminated and the reason for the termination. Bed Bath & Beyond's two termination documents are defamatory as they accuse Mr. Magaziner of purposefully misrepresenting information to his employer. Due to a requirement to self-publish this defamatory information, Mr. Magaziner has to say that he was terminated for lack of integrity. Mr. Magaziner's career in law enforcement has been significantly damaged as a result of his required self-publication. For example, Mr. Magainer has attempted to obtain a position with the Stockton Police Department, and after being heavily questioned on the matter, failed to hire him.

The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. Civ.Code § 46;

---

[1] This claim was not made in the first termination document and was drummed up during the human resource investigation. During his interview by human resource after he contested the termination, he said that the video was poor, but I thought the item on the video could have been the merchandise. Human resources asked, "so the other managers said the same thing?" Mr. Magaziner replied "yes", and this was wrongfully held as him saying that the other managers said it was definitely the merchandise.

*Taus v. Loftus* (2007) 40 Cal.4th 683, 720. Mr. Magaziner's has stated facts specific for each and every one of these elements. "'Defamation constitutes an injury to reputation; the injury may occur by means of libel or slander. A false and unprivileged oral communication attributing to a person specific misdeeds or certain unfavorable characteristics or qualities, or uttering certain other derogatory statements regarding a person, constitutes slander.' In addition to false statements that cause actual damage, the Legislature has specified that slander includes a false statement that: '...Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits....'" [Citations omitted.] *Nguyen–Lam v. Cao* (2009) 171 Cal.App.4th 858, 867.

Employers are responsible for their employees if the employee slanders an individual. "As a general proposition it may be said that, if an employee or agent while acting in the scope of his authority and in furtherance of the employer's business defames another, his employer or principal may be held liable therefor." *Correia v. Santos* (1961) 191 Cal.App.2d 844, 855. We acknowledge that an employer has a conditional privilege to communicate, without malice, with persons who have a "common interest" in the subject matter of the communication. [Civ.C. § 47(c)] But, actual malice can be shown where an employer continued to make defamatory assertions even when they were found to lack merit. *Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 729; *Cuenca v. Safeway San Francisco Employees Fed. Credit Union* (1986) 180 Cal.App.3d 985, 997. Malice can also be shown where the publication was made with reckless disregard of the truth, as evidenced by the failure to investigate thoroughly and verify the facts stated (*Rollenhagen v. City of Orange* (1981) 116 Cal.App.3d 414, 423) or by evidence of purposeful avoidance of the truth or deliberate decision not to investigate facts (*Antonovich v. Sup.Ct.* (Schwellenbach) (1991) 234 Cal.App.3d 1041, 1048). The statements contained in the document in his personal file were initially not investigated at all as evidenced by the fact that once they were investigated shown to be false. Nonetheless, Bed Bath & Beyond continued to hold to the document solely in order to "validate" its decision to terminate Mr. Magaziner. Thus, the qualified privilege will not lost in this matter.

In addition, there has been publication in this matter. A former employer may be liable for damages resulting from the employee's voluntary republication of the defamation when the employee is under a strong compulsion to disclose to others defamatory statements made by the former employer. It is enough that the circumstances creating the strong compulsion to repeat the defamation were foreseeable when the former employer made the defamatory statement to the employee. *McKinney v. County of Santa Clara* (1980) 110 Cal.App.3d 787, 796-797; see also CACI 1708. As Mr. Magaziner explained during his appeal of his termination, he is required to give a truthful explanation as to the reason for his termination when seeking law enforcement positions. During the appeal, Mr. Magaziner was told that he could say whatever he wanted as the reason for the termination and that Bed Bath & Beyond would not contradict his reasoning. This is unacceptable as it still requires Mr. Magaziner to lie. Mr. Magaziner's personnel file can be discovered in a variety of situations, and if his law enforcement employer discovered the documents contained herein show that he lied on a job application it is certain that he would not only lose that position but would be unable to find another.

Conclusion

As I am sure you know, the Labor Code allow for attorney's fees in this matter.  Of course, attorney's fees would also increase exponentially as our involvement in the matter increases. Nonetheless, we are hopeful that the matter can be resolved short of litigation.

We would recommend that Mr. Magaziner accept $220,000 as well as a removal/retraction of the defamatory reasons for his termination as full and final settlement of this matter in exchange for our not filing a lawsuit. If there is interest in resolving these claims short of litigation, please contact the undersigned prior to December 23, 2016.

Sincerely,

HENK LEONARD
A Professional Law Corporation

ROBERT P. HENK
Counsel